*In re* Petition of VESSEL OWNERS' TOWING Co., to Limit its Liability, etc.[1]

(*District Court, N. D. Illinois.* January 6, 1886.)

SHIPS AND SHIPPING — LIMITED LIABILITY OF VESSEL OWNERS — SECTION 4283, REV. ST., CONSTRUED.

A vessel must be engaged in interstate or foreign commerce to entitle her owners to claim a limited liability. A tug engaged in towing, into the waters and ports of other states, vessels engaged in interstate commerce is as much engaged in such commerce as are the vessels themselves. The purpose of the act was to limit the liability of the vessel owner, and it applies to *any* damage done by the vessel, irrespective of the locality of the thing injured, if there be no fault or privity on the part of the owner or owners of the vessel.

In Admiralty. On exceptions to commissioner's report.

*Schuyler & Kremer*, for petitioner, the Vessel Owners' Towing Company.

*F. M. Williams* and *M. St. C. Thomas*, for Chalifoux.

*J. J. Flannery*, for Murphy.

*Shufeldt & Westover*, for Hanson.

*Clarence Knight*, City Atty., for the City of Chicago.

*W. H. Condon*, for Clifford and Mary and James Foley.

BLODGETT, J. This is a petition of the Vessel Owners' Towing Company for limitation of liability, as owner of the tug Thomas Hood, for a collision with the west abutment of the Adams-street bridge, on September 28, 1883, by the schooner David Vance while in tow of said tug. The result of the collision was the fall of a section of the Adams-street viaduct, resting on the abutment, and injuries were sustained by the city of Chicago, as the owner of the abutment and viaduct, and by persons and property upon the viaduct at the time of its fall. This petition is filed under the act of congress passed March 3, 1851, to limit the liability of ship-owners, etc. The defense is that the tug was not engaged in interstate or foreign commerce, and was not, therefore, entitled to the benefit of the act.

---

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

From the evidence presented, two questions arise: *First.* Is the Hood such a vessel as entitles her owner to the benefit of the act of congress which limits the liability of the owner to the value of the vessel and her freight then pending? *Second.* Is the liability of petitioner for the damages in question such a liability as comes within the provisions of the law invoked; the abutment and viaduct not being in the waters of Chicago river, but upon the bank of the river adjoining the water?

As to the first question. The act of March 3, 1851, (section 4283, Rev. St.,) provides that the owner of a vessel shall not be liable for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred, without the privity or knowledge of such owner, beyond the value of his interest in such vessel and her freight, then pending; and while the act does not, by its terms, limit its operation to vessels engaged in interstate or foreign commerce, undoubtedly the power of congress to legislate on the subject is to be found only in the provisions of section 8, art. 1, of the constitution, which authorizes it "to regulate commerce with foreign nations and among the several states;" and if the tug in question is not a vessel employed in the business of interstate or foreign commerce, then she is not within the terms of the act of congress, and her owners cannot claim the benefit of its provision. While this tug does not herself carry freight or passengers, the subject of interstate and foreign commerce, the facts, as found by the commissioner, show that her employment consists almost wholly in towing into and out of the Chicago harbor, and upon the waters of Lake Michigan, vessels that are engaged in such commerce, and that her voyages in such employment often take her from Chicago, her home port, into the waters and ports of other states, and it seems very clear that, as an indispensable aid and adjunct to such vessels, she may be said to be employed in such commerce, and, while towing the grain, lumber, and coal laden vessels which ply between the port of Chicago and other ports upon the Great Lakes, this tug is as much engaged in commerce as the vessels themselves; and in the present mode of doing business,—especially through the agency of sail-vessels employed upon these lakes,—the tug-boat is as much a part of the commercial marine as the vessels in whose hulls the cargoes are actually carried. From the nature of her employment, this tug seems to come within the principle of the law invoked. She, in pursuit of her business, is subject to all the risks and perils of the sea incident to a commercial vessel, especially to risks of collision and explosion. Her owner takes the same risk that she may, by colliding with another vessel, through the neglect or want of skill of the pilot or other employes, or by explosion, through the negligence or incompetency of an engineer, incur a heavy liability for damages, that is taken by the owners of vessels that ply from port to port upon the errands of interstate or foreign commerce.

Therefore it seems she is clearly within the spirit and scope of the act of congress. The supreme court has said that "the object of this act was to encourage the building of ships;" by saying, in effect, that the "only risk of the owner should be his investment in the ship." And why ought not this rule to extend to a man who builds a tug-boat used in commerce, as well as to the ship that carries the commodities in her hold?

As to the second question. It is conceded that if a towing tug, like the Hood, be a vessel within the scope of the law, and she had done damage, without the privity of her owner, while upon the waters of the Chicago river, to any vessel or property floating upon the river, the owner would not be liable beyond her value; but it is contended that as the thing damaged was not upon the river, and did not pertain to commerce, such damage does not fall within the intent of the law. The terms of the act, however, are very broad: "*For any loss, damage, or injury by collision, or for any act, matter, or thing lost, damage, or forfeiture done, occasioned, or incurred without the privity or knowledge of the owner*," the owner shall only be liable to the extent of the value of his interest in the vessel and freight pending. But the situation of docks, walls of warehouses, and bridge abutments, arising up from the water's edge renders collisions with them not only possible, but probable, and constitutes one of the perils of navigation while vessels are upon the waters of rivers or harbors. A steamer, for instance, is liable to explode at a dock in a harbor, and injure persons and property on the land to a far greater amount than her value; or a tug is liable to so handle her tow as to cause her to collide with the walls of a warehouse, or building, or bridge structure adjacent to the water's edge.

It seems to me the purpose of the act was to limit the liability of the owner as to any damage his vessel should do without his privity or knowledge whether the person or thing damaged was upon the water or the land, as the risk of damaging things upon the land, especially with a steam-vessel, is as great as that of damaging things upon the water.

The commissioner's report is therefore approved, and a decree will be entered limiting the liability of the petitioner to the value of the tug.